[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 11, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16940
Non-Argument Calendar

_____

D. C. Docket No. 08-60159-CV-DLG

JULIO BARRETO,

Plaintiff-Appellant,

versus

DAVIE MARKETPLACE, LLC,
a Florida limited liability
company d.b.a. Foodtown,
ESMAIL MOBARAK,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 11, 2009)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Julio Barreto appeals the district court's entry of summary judgment in favor of his former employer, Davie Marketplace, LLC d/b/a Foodtown, on his claim for violation of the overtime pay requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. On appeal, Barreto argues that the district court erred in holding that Davie Marketplace had satisfied as a matter of law the "executive exemption" to the FLSA's overtime pay requirements because there are disputed facts as to three of the four prongs of the "executive exemption" test: (1) whether Barreto's "primary duty" as "manager" of the produce department consisted of management; (2) whether Barreto customarily and regularly directed the work of two or more other employees; and (3) whether Barreto's recommendations with respect to hiring and firing employees were given "particular weight" by management. Upon thorough review of the record and careful consideration of the parties' briefs, we conclude that the evidence creates a genuine issue of material fact as to all three of these elements. Accordingly, we reverse the entry of summary judgment and remand this case to the district court.

We conduct a de novo review of a district court's order granting summary judgment, "applying the same legal standards as the district court." Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000). "Summary judgment is appropriate

if the evidence before the court shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citations omitted).  The summary judgment movant bears the initial burden of showing the court, by reference to the record, that no genuine issues of material fact exist to be determined at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The movant meets this burden by showing that there is an "absence of evidence to support the non-moving party's case."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593 (11th Cir. 1995).  Once this initial burden is met, the other party must "go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. at 593-94 (citations and quotations omitted).

The FLSA provides that employees are generally entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty per week.  See 29 U.S.C. § 207(a)(1).  The FLSA exempts from its overtime pay requirements "any employee employed in a bona fide executive,

3

administrative, or professional capacity." See 29 U.S.C. § 213(a)(1); see also

Avery v. City of Talladega, 24 F.3d 1337, 1340 (11th Cir. 1994). The employer

has the burden of showing entitlement to an exemption, Jeffery v. Sarasota White

Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995), and we construe overtime exemptions

narrowly, against the employer. Avery, 24 F.3d at 1340 (citing Brennan v. Sugar

Cane Growers Co-Op, 486 F.2d 1006 (5th Cir. 1973)). This court has recognized

the "Supreme Court's admonition that courts closely circumscribe the FLSA's

exceptions." Nicholson v. World Bus. Network, Inc., 105 F.3d 1361, 1364 (11th

Cir. 1997). The executive exemption "is to be applied only to those clearly and

unmistakably within the terms and spirit of the exemption." Morgan v. Family

Dollar Stores, Inc., 551 F.3d 1233, 1269 (11th Cir. 2008).

The Code of Federal Regulations defines executive employees as those (1)

who receive compensation "of not less than $455 per week"; (2) whose "primary

duty" is the management of the enterprise in which the employee is employed or of

a customarily recognized department thereof; (3) who customarily and regularly

direct the work of two or more other employees; and (4) who have the authority to

hire or fire other employees or whose suggestions and recommendations as to the

hiring, firing, advancement, promotion, or any other change of status of other

employees are given "particular weight." 29 C.F.R. § 541.100(a). As evidence

4

that Barreto met all four prongs on this test, Davie Marketplace submitted only the deposition of Barreto, with attached exhibits, and the three-page affidavit of store supervisor Ajay Dhawan. In responding, Barreto relied solely on his deposition. Thereafter, based only on this evidence, the district court granted summary judgment, finding that Davie Marketplace was entitled to the executive exemption defense as a matter of law.

On appeal, it is uncontested that Barreto was paid a flat rate of $500.00 per week, thereby satisfying the first element of the executive employee definition. The parties, however, dispute the applicability of the remaining three elements. Accordingly, we first consider whether the evidence submitted by the parties creates a genuine issue of fact regarding whether management was Barreto's "primary duty" in his employment as manager of the produce department at Davie Marketplace.

The Code of Federal Regulations defines "primary duty" as "the principal, main, major or most important duty that the employee performs" but explains that the "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). The factors to consider in this analysis include: (1) the amount of time spent performing management duties; (2) the

5

relative importance of the management duties as compared with other types of duties; (3) the frequency with which an employee may exercise discretionary powers; (4) the employee's relative freedom from direct supervision; and (5) the relationship between the employee's salary and the wages paid to other employees for the kind of non-management work performed by the employee. Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1264 (11th Cir. 2008) (citing 29 C.F.R. § 541.103). This analysis specifically requires an examination beyond an employee's title to the specific duties performed by the employee.

The district court, relying on Barreto's deposition and Dhawan's affidavit, found as a matter of law that Barreto's duties were primarily managerial. Barreto stated in his deposition that Davie Marketplace hired Barreto as the Manager of the Produce Department, paying him a flat rate of $500.00 per week for all hours worked. In this position, Barreto admitted to performing certain managerial tasks, namely, ordering and pricing produce as needed to meet proscribed profits and providing direction and work schedules to the other three employees in the department. Store supervisor Ajay Dhawan's affidavit asserted that (1) Barreto was given wide latitude to run the produce department and received little supervision from upper management, (2) Barreto was responsible for reaching a certain level of productivity for the department and for using his judgment to

6

accomplish that important business objective, and (3) Barreto earned more that two times the compensation earned by other employees in the produce department. The district court found that Barreto's deposition testimony did not directly dispute the assertions in Dhawan's affidavit and therefore deemed these assertions to be admitted. Accordingly, after acknowledging that Barreto's deposition also asserted that he spent the majority of his time performing non-managerial tasks and that his discretion was somewhat limited by the store's policies, the district court found that the evidence nonetheless required a finding that Barreto's primary duties were managerial.

Barreto claims that although his title was that of "manager" and he admittedly performed some managerial-type tasks, his deposition testimony, considered in the light most favorable to him, creates a genuine dispute as to whether management was his primary duty. We agree. The parties agree that Barreto performed the managerial tasks of ordering produce, pricing produce, and scheduling and directing produce department employees; however, it is also undisputed that Barreto spent more than 50% of his time performing tasks identical to those performed by the hourly, non-exempt employees. Indeed, Barreto testified that, due to management's under-staffing of the department, he was required to perform non-exempt work for such a large percentage of his time that he had no

7

time to fulfill some of the managerial responsibilities he had been nominally given, i.e., to supervise other employees and to purchase the least expensive produce. He also testified that the four other non-exempt employees did not require his supervision, as they already "knew what the job was." This evidence suggests that Barreto's non-management responsibilities were more important to the operation of the store than his few managerial duties.[1] Cf. Diaz v. Team Oney, Inc., 291 Fed. Appx. 947 (11th Cir. 2008) (rejecting plaintiff's claim that management was not his "prime responsibility" where the record was clear that "his managerial duties – as the highest ranking employee on duty during the majority of his shifts, in which he supervised the drivers, counterpersons, and cooks, apportioned work, made deposits, filled out required forms, interviewed prospective employees, and engaged in local restaurant marketing – were significantly more important to the operation of the restaurant than his non-managerial tasks").

---

[1] The district court correctly noted that "employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." See 29 C.F.R. § 541.700(b), (c) ("Time alone . . . is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register."). However, where an employee spends the majority of his time on non-exempt work and has admittedly few managerial-type obligations, there is at least a factual question as to whether the non-exempt duties are comparatively more important than the exempt duties. Such determinations of fact in the face of conflicting evidence are within the exclusive province of a jury. See e.g., Morgan, 551 F.3d at 1269.

Barreto also presented evidence that his discretion in performing his managerial tasks was limited and his work was subject to supervision. Specifically, Barreto testified that he was required to order the cheapest produce available from a list of vendors pre-selected by management, to fix the pricing of the produce by increasing the wholesale prices according to a set scale given to him by management, and to order produce only as needed to restock preexisting supplies. He testified that he was told at the managers' meeting how many employees he needed to schedule for each shift and how many hours the employees would work. Barreto also testified that when he asked management to hire one or two more employees for his understaffed department, management denied his request and instructed him to cut the hours of the remaining hourly employees from 40 to 30 hours per week. This testimony, considered in the light most favorable to Barreto, contradicts Dhawan's conclusory affidavit statements that Barreto was given "wide latitude" in managing his department and that he was responsible for using "his judgment" to accomplish certain business goals. As such, Barreto's testimony creates a genuine issue of fact regarding the extent of Barreto's discretionary powers and relative freedom from direct supervision while performing his identified managerial tasks, i.e., ordering produce, setting prices, and setting the work schedule for non-exempt employees.

9

In summary, Barreto's sworn testimony suggests that Barreto spent the majority of his time performing non-management duties; the management duties he did perform were less important to his position than the other types of duties he performed; and Barreto infrequently exercised his discretion and was subject to direct supervision. Accordingly, even though the evidence suggests that Barreto's wages were significantly greater than the wages paid to the non-exempt employees in the produce department, we conclude that a reasonable factfinder could find that Barreto's managerial tasks did not constitute his "primary duties" under the balancing test set forth in the Regulations. See Morgan, 551 F.3d at 1280-81 (holding that store managers were not exempt executives where evidence showed that they "spent most of their time performing manual, not managerial, tasks, that corporate manuals micro-managed store managers' performance of those tasks, that the 380 district managers closely supervised their store managers, and that store managers had little discretion or freedom from supervision").

Based solely on Barreto's deposition, the district court also found that the evidence established that Barreto "customarily and regularly directed the work of two or more employees" and that his recommendations in hiring, firing or the advancement of employees were given "particular weight." Accordingly, the court found Davie Marketplace met the third and fourth prongs of the executive

10

exemption test as a matter of law. Specifically, the district court noted that Barreto admitted that "he told employees who worked in the produce department their schedules and place[d] them on either the morning shift or afternoon shift," that "he would assign jobs to the employees to take merchandise outside, and had them rotate bad produce and refill missing produce," and that "none of [the other employees] were experienced." The district court also noted that Barreto admitted that he had recommended that an employee be terminated for eating "very expensive fruit" and that the employee had subsequently been fired. Furthermore, although Barreto made no recommendations regarding hiring or advancement of employees, the district court found that "it is unlikely that evaluations and recommendations of advancement of employees would be made" in the five months Barreto worked for Davie Marketplace. Therefore, although Dhawan's affidavit did not comment upon Barreto's authority to direct other employees or upon the weight given to his hiring or firing recommendations, the district court found that Barreto's deposition testimony alone established that the third and fourth prongs of the executive exemption had been met as a matter of law.

We conclude, however, that Barreto's deposition testimony, when read in its entirety, does not support the district court's conclusion. First, regarding the third prong, the Regulations define "two or more other employees" as either two full-

11

time workers or their equivalent. 29 C.F.R. § 541.104(a). As to equivalency, "[o]ne full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent." Id.; Morgan, 551 F.3d at 1274. In his deposition, Barreto testified that the produce department consisted of five employees, including himself, during his first week of employment, but that after the first week, "two of them were reduced" and that ultimately, there were "three less" employees in the department. Barreto also testified that after the first week, there were "three [employees in the produce department] in the morning and one in the afternoon." Considering this testimony in the light most favorable to Barreto, after his first week on the job, Barreto supervised two half-time employees in the morning and was by himself in the department in the afternoon. Davie Marketplace offers no evidence refuting this testimony. Accordingly, we conclude that Davie Marketplace has not satisfied its burden of proving that Barreto regularly directed the work of two or more full-time employees.

Regarding the fourth prong, we disagree that evidence of one employment recommendation that was followed is sufficient to establish as a matter of law that Barreto's recommendations regarding hiring and firing were given a "particular weight." The Regulations explain that "[t]o determine whether an employee's

suggestions and recommendations are given 'particular weight,' factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Here, Barreto's testimony established that, in one instance, his recommendation to fire an employee for a serious infraction – stealing – was followed; however, his testimony also showed that in another instance, he recommended hiring additional employees and this advice was not heeded. Indeed, after he recommended that additional employees be hired, Barreto was directed instead to cut the hours of his remaining employees. Furthermore, Barreto stated that he did not evaluate the employees in his department and it is uncontested that he did not interview candidates or make any decisions regarding the hiring or advancement of other employees. As such, the evidence in the record creates a genuine issue of fact as to whether Barreto's employment recommendations were given "particular weight."

Viewing the evidence in the light most favorable to Barreto, there are questions of fact as to whether his "primary duty" consisted of management, whether he regularly directed the work of two or more full-time employees, and

13

whether his recommendations in hiring, firing, or advancement of employees were given particular weight. Summary judgment based on the executive exemption is appropriate only where the four prongs of the "executive exemption" test are met as a matter of law; it is not the appropriate disposition where, as here, there remain issues of fact regarding three of the four elements. Accordingly, we vacate the entry of summary judgment and remand this matter to the district court.

VACATED AND REMANDED.